SLUDER *v.* STATE.

Opinion delivered February 4, 1924.

1. CRIMINAL LAW—CREDIBILITY OF WITNESSES.—The credibility of witnesses and the weight of evidence are questions for the jury.

2. CRIMINAL LAW—CONCLUSIVENESS OF VERDICT.—On appeal from a conviction of selling intoxicating liquor, the evidence will be given its highest probative force in favor of the verdict.

3. INTOXICATING LIQUORS—SALE OF JAMAICA GINGER.—A conviction of
   selling intoxicating liquor *held* sustained by proof of selling
   Jamaica ginger of high alcoholic content.

Appeal from Johnson Circuit Court; *J. T. Bullock,*
Judge; affirmed.

*Jesse Reynolds,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter, Wm.
T. Hammock, Darden Moose* and *J. S. Abercrombie,*
Assistants, for appellee.

WOOD, J.   Appellant was indicted under § 6160 of
Crawford & Moses' Digest, which reads as follows: "It
shall be unlawful for any person, firm or corporation to
manufacture, sell, or give away, or be interested, directly
or indirectly, in the manufacture, sale or giving away of
any alcoholic, vinous, malt, spirituous or fermented
liquors, or any compound or preparation thereof, com-
monly called tonics, bitters or medicated liquors, within
the State of Arkansas."

The indictment followed substantially the language
of the statute, charging that appellant did "wilfully,
unlawfully and feloniously sell and give away, and was
wilfully, unlawfully and feloniously interested, directly
and indirectly, in the sale and giving away of ardent,
vinous, malt, spirituous and fermented liquors and alco-
holic spirits and a certain compound and preparation
thereof commonly called tonics, bitters and medicated
liquors," etc.

Charlie Crowder testified that about July, 1923, he
saw Ward Love buy some extract of appellant at Knox-
ville.   Love bought four or five bottles.   He drank it—
witness helped him to drink it.   It was either lemon or
vanilla extract.   It was stamped on the bottle, "Ninety-
five per cent. alcohol."   It didn't intoxicate witness or
Love—didn't taste like it was intoxicating—didn't
taste good, and witness didn't drink much of it.   This all
occurred in Johnson County, Arkansas.

Witness Love testified, corroborating the testimony
of Crowder.   He stated that he bought of appellant and
drank three, four or five bottles of extract.   Witness,

among other things, was asked to tell the jury whether the extract had an intoxicating effect on him, and answered, "If it did it had mighty little—it might have had a little." Witness paid 25 cents a phial for it, and told appellant, when he bought it, that he was getting it for cooking purposes. Witness didn't remember what the brand was.

R. C. Temple testified that he was sheriff of Johnson County. He searched appellant's store, and found a large amount of the extract. Witness couldn't say how many bottles, but appellant had an unusually large amount of the extract. Part of his shelves were pretty well filled with the stuff. He had a tolerably large store building, and had quite a lot of extract on the shelves. Witness also searched the depot at Knoxville and found two boxes of extract shipped to appellant—found Jamaica ginger there. Witness arrested appellant, and he paid a fine for having that in his possession. He had the Jamaica ginger stored in his cash safe. Witness found a pile of empty bottles at appellant's house, two or three feet high and six or eight feet broad, containing one or two thousand bottles. Witness talked to appellant about the amount of alcohol there was in this extract. It wasn't labeled. It was labeled, but it didn't have any percentage label on it. There was nothing on the wrapper or bottle to indicate the percentage of alcohol, and Jamaica ginger was labeled ninety-three per cent. Appellant said: "Well, I sell that all the time for medical purposes. There is all that extract there; it's got alcohol in it, too." Witness believed he said about 85 per cent. Witness brought home three or four bottles of the extract, but didn't have it examined or analyzed to determine the amount of alcohol. Witness found at appellant's house a dozen or fifteen empty bottles that had contained Jamaica ginger. Most of them were two-ounce bottles. Most of the bottles he found at appellant's house were Jamaica ginger bottles and possibly a few extract bottles.

The appellant testified, in his own behalf, that it was not his purpose at any time to sell any extract which contained alcohol. Witness told Sheriff Temple that he had not handled the extract for several years before the Ashdown case or the Supreme Court's decision in this Jamaica ginger proposition. He had been selling it there for years, but hadn't sold a bottle since that decision and for several months before, waiting for the decision of the Supreme Court on the real issue in the case as to whether or not it was a violation of the law to sell it. Witness had not sold any extract containing alcohol, within his knowledge. The label didn't show any, and the revenue department didn't require that it be labeled. Witness denied that he sold any extract to Ward Love; said that he had never seen him before in his life. Witness kept pretty well posted on the government regulations concerning the sale of these things, as he didn't want to violate the law and go to the "pen." The government didn't require them to label the bottle any more, showing how much alcohol this extract contained. Witness didn't know whether it had alcohol in it or not. It didn't show any percentage, and all representatives were selling it all over Arkansas. Witness bought his extract by deals—two or three gross at a time; vanilla, lemon, and six or eight different kinds—all mixed up—some orange and some banana. Witness always doubled his shipments rather than ship them back; and the bottles the sheriff found at the depot may have been two gross. Witness never sold four or five bottles of the extract at a time. The extract cost $2.25 a dozen—about $25 or $30 a hundred. Before the decision of the Supreme Court witness had been selling "jake" about eighteen years, but hadn't sold a bottle since. Witness moved the old bottles down to his house simply to clean up. He never sold a bottle of Jamaica ginger, except for medical purposes. in his life. He would not have sold extract to any one, if he had known it contained alcohol, under any circumstances. He had not sold any of it as a beverage or for the purpose of intoxication. Witness exhibited to the

jury bottles of the Silver Moon extract. All the brands that he kept you can buy in Clarksville by the dozen. Vanilla is one of the leading brands appellant handles, but he didn't bring a sample of that, because he was out of it.

The jury returned a verdict finding the appellant guilty, and fixing his punishment at one year in the penitentiary. Judgment of sentence was rendered on the verdict, from which is this appeal.

The court correctly declared the law. At least appellant urges no objection to any of the instructions of the court. He only contends here that there was no evidence to sustain the verdict. The credibility of the witnesses— the weight of the evidence—was for the jury. *Field* v. *State,* 154 Ark. 191; *West* v. *State,* 154 Ark. 555; *Cox* v. *State,* 160 Ark. 283; *Meeks.* v. *State,* 161 Ark. 489.

We must give the evidence its strongest probative force in favor of the verdict. *Holmes* v. *State,* 132 Ark. 135. Applying the law as announced by this court in *Leslie* v. *State,* 155 Ark. 530, to the facts of this record, the testimony as above set forth is sufficient to sustain the verdict. The judgment is therefore correct, and it is affirmed.